THE PEOPLE OF THE STATE OF NEW YORK ex rel. CENTRAL UNION TRUST COMPANY OF NEW YORK, Trustee of the Estate of MARCIA ANN GAVIT, Relator, *v.* JAMES A. WENDELL, as Comptroller of the State of New York, Respondent.

Third Department, May 4, 1921.

**Taxation — income tax — interest on real property mortgage on which recording tax paid is part of mortgagee's taxable income — Tax Law, § 251, exempting mortgages on which recording tax paid from State and local taxation, does not exempt interest from income tax — nature of income tax.**

The interest on real property mortgages on which the recording tax has been paid is one of the elements in determining the taxable income of the mortgagee.

Section 251 of the Tax Law, which provides that all mortgages of real property on which the recording tax has been paid, and the debts and obligations, which they secure, shall be exempt from taxation by the State and the local subdivisions thereof, does not exempt the interest on such mortgages from the income tax.

The income tax is a tax on the individual, and his income is used only in fixing the measure of the tax. It is not imposed directly on any particular income, and the income from a particular source is but one element to be considered in connection with other elements in determining the measure of taxation which is to be imposed on the individual.

JOHN M. KELLOGG, P. J., dissents, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 12th day of February, 1921, directed to James A. Wendell, as Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings had in adjusting an account for income taxes for the taxable year of 1919 against the petitioner under article 16 of the Tax Law, and in revising said account.

*Larkin, Rathbone & Perry* [*Hersey Egginton, John M. Perry* and *Stewart M. Seymour* of counsel], for the relator.

*Charles D. Newton, Attorney-General* [*James S. Y. Ivins, Deputy Attorney-General,* of counsel], for the respondent.

COCHRANE, J.:

The estate represented by the relator was the owner of certain real estate mortgages on which the recording tax required by section 253 of the Tax Law had been duly paid. Section 251 of that law provides as follows: "All mortgages of real property situated within the State which are taxed by this article and the debts and the obligations which they secure, together with the paper writings evidencing the same, shall be exempt from other taxation by the State, counties, cities, towns, villages, school districts and other local sub-divisions of the State," except as therein provided which is not here material. The relator contends that the interest on such mortgages may not be considered for the purpose of ascer-taining the " net income " constituting the basis of the income tax imposed by section 351 of the Tax Law. The Comptroller has included such interest as one of the elements in determin-ing such " net income " of the relator and has assessed the income tax against the relator on the basis thereof. The pur-pose of this proceeding is to test the propriety of the position taken by the Comptroller.

The action of the Comptroller is clearly within the pro-visions of the Tax Law (§§ 351, 352, 357, 359, as added by Laws of 1919, chap. 627), relating to the imposition of income taxes, and known as the Income Tax Law. The principal con-tention of the relator is that section 251 of the Tax Law (as amd. by Laws of 1916, chap. 323, and Laws of 1917, chap. 485), which with correlated sections is in article 11, known as the Mortgage Tax Law, was in effect a contract between the State and mortgage investors that the latter on payment of the recording tax imposed by section 253 of the Tax Law (as amd. by Laws of 1916, chap. 323) should be exempt from all other taxation in respect to such mortgages and that the provisions of the so-called Income Tax Law requiring the interest on such mortgages to be considered in fixing the net income with respect to which the income tax is imposed is inconsistent with said section 251 and consequently impairs the obligation of the State's contract with such mortgagees. For the purposes of this discussion it may be assumed without so deciding that the purpose of section 251 was to encourage mortgage investments and that it possesses the characteristics

of a contract between the State and mortgagees who have made their investments prior to the enactment of the income tax provisions of the law. It does not follow, however, that the interest earned by such mortgages was within the purview of such contract so as to be exempt from other taxation. It is true that as between the parties to a mortgage the interest thereon is an incident of the principal and like the latter is controlled by the mortgage provisions. But in considering what is exempt from taxation the rule is that such alleged exemption must be " described in clear and unambiguous language, and appear to be undisputably within the intention of the Legislature." (*People ex rel. Westchester Fire Ins. Co.* v. *Davenport,* 91 N. Y. 574, 586.) In *Yazoo & Mississippi Valley R. Co.* v. *Adams* (180 U. S. 1, 22) it was said: " Exemptions from taxation are not favored by law, and will not be sustained unless such clearly appears to have been the intent of the Legislature. * * * And while, as we have held in many cases, Legislatures may, in the interest of the public, contract for the exemption of other property, such contract should receive a strict interpretation, and every reasonable doubt be resolved in favor of the taxing power. Indeed, it is not too much to say that courts are astute to seize upon evidence tending to show either that such exemptions were not originally intended, or that they have become inoperative by changes in the original constitution of the companies." In *Chicago, Burlington & Kansas City R. R.* v. *Guffey* (120 U. S. 569, 575) the rule was declared in these words: " It is the settled doctrine of this court that an immunity from taxation by the State will not be recognized unless granted in terms too plain to be mistaken." In the light of the foregoing rule the purpose of the Legislature in enacting the recording tax provisions of the law must be ascertained. Likewise such purpose can only be intelligently ascertained by reference to conditions then existing. Mortgages were subject to assessment by the local assessors. Only the principal of such mortgages was included in the assessment roll. Interest thereon played no part in the system of taxation then in vogue. Clearly the dominant idea in the mind of the Legislature was to render mortgagees independent of the action, capricious or otherwise of local tax officials. It is true that

the State was included in the prohibition against taxing recorded mortgages, but that the controlling purpose was as above indicated is manifested by the detailed enumeration of the subdivisions of the State from the activities of which such mortgagees were rendered immune. " Counties, cities, towns, villages, school districts and other local subdivisions of the State " were each specifically named as being deprived of the right to exercise any of their taxing powers in respect to such mortgagees. The phraseology of the section emphasizes the idea that it was such particular kind of taxation as then existed against which relief was being granted. Otherwise there was no occasion for specifying the various subdivisions of the State. Such idea is further emphasized by the title of said section 251: " Exemption from local taxation." Again, section 253 carefully confines the rate of taxation to the " principal debt or obligation." That is all which in any event was the subject of taxation at the time of that legislation. Interest as such was not taxable. And when in section 251 it was declared that all mortgages " *taxed by this article* " should be exempt the reasonable construction thereof is that it was only the " principal debt or obligation " constituting the basis of taxation thereof as stated in section 253 which was intended to be exempt. Such interpretation is clearly within the rule of strict construction as declared in the authorities above cited. That there is at least a doubt as to whether the taxability of interest was within the legislative mind is, we think, reasonably clear. All doubts and ambiguities, however, must be resolved in favor of the taxing power. We think that sections 251 and 253, construed in the light of conditions existing at the time of their enactment and with reference to the manifest purpose of their enactment, disclose an intent to deal only with such taxation and such methods of taxation as were then prevalent and have no reference to the income derived from such mortgages. There was no occasion to take into account such income or to legislate in reference thereto for the reason that it was not then taxable. Furthermore, it cannot be assumed that the Legislature intended to barter away its taxing powers and every mortgagee must have known that by the mere payment of the recording tax he was not rendered immune from all other taxation in

People ex rel. Central Union Trust Co. *v.* Wendell. 135

App. Div. 131]         Third Department, May, 1921.

the future should the general interest of the community or the public exigencies so require. (*People ex rel. Iroquois Door Co.* v. *Knapp*, 186 App. Div. 172, 175; affd., 227 N. Y. 592; *People ex rel. Gallatin National Bank* v. *Commissioners*, 67 id. 516; *People ex rel. Cunningham* v. *Roper*, 35 id. 629, 635.) The possibility of the enactment of an income tax many years in the future did not exist in the minds of the legislators at the time they enacted the recording tax provisions. Those provisions and the exemption created thereby had no reference to an entirely distinct system of taxation at some time in the future such as is created by the income tax provisions. We are not unmindful that it has been held that a tax on income is in reality a tax on the property producing the income. (*Pollock* v. *Farmers' Loan & Trust Company*, 157 U. S. 581; 158 id. 601; *Hancock* v. *Singer Manufacturing Company*, 62 N. J. L. 289, 342; *Opinion of the Justices*, 220 Mass. 613, 623.) That might be important in reference to some questions, as for instance if we were considering the legality of a tax on income, there being a constitutional prohibition against such tax on the principal. Our problem here, however, is one of statutory construction and to ascertain the legislative intent, and in a problem of that nature we are not hampered by constitutional restrictions. In our view of sections 251 and 253 of the Tax Law it is as if the Legislature had said, there shall be no other tax on the principal of mortgages except the recording tax, but we reserve the right to impose in the future should circumstances require a tax on the income of such mortgages. If we have properly construed such legislation, the validity of the tax in question necessarily follows.

There is still another view to take of this question. The income tax is not directly at least imposed on any particular income. The recording tax is imposed on the mortgage (§ 253); the income tax is a tax on the individual. It is " imposed upon every resident of the State " (§ 351). His income is used only in fixing the measure of such tax. It is the " net income " on which the tax is computed (§ 351). The " net income " means the " gross income " of the taxpayer less legal deductions (§ 357) and in determining the " gross income " mortgage interest as well as all other income is

136    People ex rel. Central Union Trust Co. *v.* Wendell.

Third Department, May, 1921.        [Vol. 197

included with numerous exceptions specified in section 359. From such " gross income " thus determined are to be subtracted numerous deductions (§ 360) and also certain exemptions (§ 362) before the tax is computed. Hence the income from any particular source is but one element to be considered in connection with other elements in determining the measure of the taxation which is imposed on the individual. In no proper sense may it be said that the tax is imposed on the interest of any particular mortgage. That is merely a factor in the determination of the amount of such taxation. We think, therefore, for the reasons stated that the contention of the relator cannot be sustained.

The determination should be confirmed, with fifty dollars costs and disbursements.

All concur, except John M. Kellogg, P. J., dissenting, with an opinion.

John M. Kellogg, P. J. (dissenting):

The State is bound by its contracts which are based upon an actual and not a speculative consideration. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealey,* 224 N. Y. 187, 197; *First Construction Co.* v. *State of New York,* 221 id. 295.) Here, in order to induce the taking of real estate mortgages, the Legislature imposed a recording tax by sections 251, 253 and 254 of the Tax Law, and agreed with the relator, who complied with the act, to exempt " all mortgages   *   *   *   and the debts and the obligations which they secure, together with the paper writings evidencing the same   *   *   *   from other taxation by the State," and the subdivisions of the State, except from taxes imposed under certain sections of the statute which we are not interested in. In effect section 253 requires a payment in advance of a sum which is agreed to be in lieu of all future taxes on account of the mortgage, the debt and the obligation secured, together with the writings evidencing the same. Section 254, relating to mortgages made before the act, whether recorded or unrecorded, is a request to the owner to come within the act and obtain the benefits of the exemption. There the consideration of the contract more clearly appears.

The mortgage secured the payment of the interest as well as the principal; in fact the interest was clearly the moving

reason for making the loan and taking the mortgage. The relator would have kept its money if it was to be returned without interest; it loaned it to secure the interest. The interest is not, therefore, a mere incident to the mortgage, but is an essential part of it, and is a part of the debt secured.

Where the law gives interest as damages for the breach of a contract, it may be considered an incident to the debt; but where the original contract requires the payment of interest, the agreement to pay the interest is as much a part of the debt and obligation as is the agreement to pay the principal. (*Southern Central R. R. Co.* v. *Town of Moravia,* 61 Barb. 180, 189; *Fake* v. *Eddy,* 15 Wend. 76; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 583.)

The State income tax is imposed upon net incomes. Interest, to be taxable as income, need not be actually paid. Unpaid interest, which has accrued and is payable, is subject to the tax. (Tax Law, § 350, subd. 6.) The taxpayer must include in his return all interest which is accrued and payable. Subdivision 1 of section 359 speaks of income " received," but subdivision 6 of section 350 provides that the word " received " means " received or accrued." " Accrued " means " due." (*Allen* v. *Armstrong,* 58 App. Div. 427; 1 C. J. 733.) In *Pollock* v. *Farmers' Loan & Trust Co.* (*supra*) it was held, under the old Federal Income Tax Law of 1894 (28 U. S. Stat. at Large, 509, chap. 349; Id. 553, § 27 *et seq.*), that income from municipal bonds could not be taxed by the Federal authorities, as they had no right to tax the bonds themselves.

The past due interest upon a mortgage, which by its terms draws interest, forms a part of the net income for taxation. It has not been paid, and the only right to it is that it is payable by the terms of the mortgage, the obligation upon which the tax has been paid; it is a part of the debt secured by the mortgage, and is exempt. Needless to say that mortgage loans were made under the act, and old mortgage loans were continued, in reliance upon the exemption provision. The State is bound to keep its obligation with the mortgagees and cannot be permitted to change its position.

If there is a fair doubt as to the proper construction of section 359 of the Tax Law, the court will be solicitous to adopt the construction which makes for validity rather than

for invalidity. In construing the statute it will be assumed that the State meant to meet its fair obligations and deal honorably with its citizens and is not seeking to avoid its just obligations. The following cases sustain these views: *People ex rel. Cooper Union* v. *Wells* (180 N. Y. 537); *People ex rel. Cooper Union* v. *Gass* (190 id. 323); *People ex rel. Roosevelt Hospital* v. *Raymond* (194 id. 189). In each case it was claimed that an exemption from taxation in the charter of a corporation was not destroyed by a subsequent general tax law. In the *Wells* case it was held that the charter of the relator exempting it from taxation prevented the Legislature from destroying the exemption. The case was without opinion in the Appellate Division (98 App. Div. 623) and the Court of Appeals, but is explained in *People ex rel. Roosevelt Hospital* v. *Raymond* (194 N. Y. 198, 199). In the *Gass* case it was held that the charter exemption could be repealed by virtue of section 1 of article 8 of the Constitution, which permits all general laws and special laws with reference to corporations to be altered from time to time or repealed. The *Roosevelt Hospital* case explains the other cases, and considers that a general statute embracing the subject of taxation ordinarily repeals an exemption contained in a special charter, but that where the exemption is a matter of contract, a proposition by the State which has been acted upon by the party claiming the exemption, the presumption is that it is not repealed and that the exemption survives the general statute. It could not be presumed that the Legislature intended to violate the good faith and the agreement of the State, but it is presumed to have intended to keep faith and to observe its contracts by continuing the exemption. The constitutional provision has no application here and the agreed exemption continues.

In my judgment a fair construction of the Tax Law exempts the interest upon mortgages which have paid a recording tax. If this construction is wrong, then the part of the statute attempting to destroy the exemption is unconstitutional. I favor reversal.

Determination confirmed, with fifty dollars costs and disbursements.