LANGSTON BACON, Appellant, v. JOHN R. RANSON, County Collector of Jackson County.—56 S. W. (2d) 786.

Court en Banc, December 31, 1932.

*W. A. Harnsberger, John L. Gaylord* and *John I. Williamson* for appellant.

*Stratton Shartel,* Attorney-General, *Henry H. Stern* and *Denton Dunn,* Assistant Attorneys-General, *Martin, Scheuffler & Carbaugh, Norwin D. Houser, Paul C. Sprinkle* and *Inghram D. Hook* for respondent.

990

RAGLAND, J.—In this proceeding, appellant, a resident of Jackson County, seeks to enjoin the collection of an income tax assessed against him for the year 1931, on the sole ground that the Income Tax Act of 1917, as amended in 1931, is in certain respects unconstitutional. It is alleged that the Act violates Sections 3, 4, 6, 7 and 9 of Article 10 and Section 15 of Article 2 of the State Constitution, and the Fourteenth Amendment of the Constitution of the United States as well. The provisions of the sections just mentioned, while familiar enough to most, may not readily come to mind by the mere naming of the sections by number and article. Said Section 3 provides that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the taxes; Section 4 provides that all property subject to taxation shall be taxed in proportion to its value; Section 6 provides that certain property therein enumerated shall be exempt from taxation, and that certain other property may be exempted by general law; Section 7 provides that property not enumerated in Section 6 shall not be exempt; Section 9 provides that "no county, city, town or municipal corporation, nor the inhabitants thereof, nor the property therein, shall be released or discharged from their or its proportionate share of taxes to be levied for State purposes, nor shall commutation for such taxes be authorized in any form whatsoever;" and Section 15, Article 2, provides that the General Assembly shall not pass any law retrospective in its operation. The Fourteenth Amendment requires no identification.

In Wire Company v. Wollbrinck, 275 Mo. 339, 205 S. W. 196, it was contended that the original Income Tax Act of 1917 violated practically all of the constitutional provisions above noted, but the contention as to each was disallowed. With respect to its alleged violation of said Sections 4, 6 and 7, this court said:

"It is apparent, therefore, that when the Constitution of 1875 was adopted, the word 'property' as the basis for taxation, proportioned to value, had acquired a fixed and definite meaning preclusive of personal incomes, occupations, privileges and similar sources of revenue. . . . It was the evident intent, therefore, of the Constitution of 1875, Section 4, supra, to use the word 'property' in

the same sense and meaning which it had been held to carry when used in a similar section in two prior constitutions. . . .

"From what has been said as to the division of "property' into its component classes and the limitation of that term under the Constitution to tangible and specific lands and personalty as the basis for taxation *ad valorem,* it follows that the excluded classes or property embracing incomes, etc., are not within the regulative provisions of the Constitution (Secs. 6, 7, Art. 10) specifying what 'property' shall be exempt from taxation."

As to its contravention of the uniformity provisions we said:

"The Constitution (Section 3, Art. 10) provides 'taxes may be levied and collected for public purposes, only. They shall be uniform upon the *same class of subjects,*' etc. By necessary implication this constitutional provision recognizes the power of the Legislature to classify the subjects falling within its restriction, and only requires that the tax shall be uniform upon the classified persons, or the classified subjects of taxation. In the Missouri act under review, persons, corporations and entities are distinguished and classified. The act also provides a classification as to the amount, of the portion of the net income of each class of persons, corporations or entities, which is subject to taxation therein. The act further provides for the payment of an identical rate of taxation upon each of the classifications of income subject to its burden, and that each person, corporation or entity shall pay the same tax which is paid by every other person, corporation or entity belonging to the same class. That the Legislature had the power to create such classification is implied by the *very terms* of the provision of the Constitution (Sec. 3, Art. 10) that taxes thereunder shall be uniform upon the same class of subjects. Necessarily this language would be meaningless unless interpreted to empower the Legislature to create distinct classes of 'subjects.' In the act under review it is not even contended (conceding the power to levy the tax) that the provisions distinguishing the persons and grading the tax to be paid in accordance with such distinctions, are not founded in reason, in justice and for the utility of the public—the true criteria which should govern all legislative action. Indeed the essential justice of the various classifications of the act seem to be evident."

Touching its impingement upon rights guaranteed by the Fourteenth Amendment we further said:

"Nor is there any logical basis for the further contention of appellant that the Income Tax Law contravenes the Fourteenth Amendment of the Constitution of the United States. In speaking of the relationship of the Nation to the States, as to the exercise of the taxing power by the latter, the Supreme Court of the United States said:

" 'There is no general supervision on the part of the Nation over State taxation; and in respect to the latter, the State has, speaking generally, the freedom of a sovereign both as to objects and methods.' " .

■ The constitutionality of the basic Act of 1917 having been thus set at rest, the present attack has been directed against the Act *as amended in 1931.* The changes introduced by the amendments of 1931, so far as they have any bearing on the questions raised, are found in the following portions of New Section 10115 (Laws 1931, p. 365), enacted in lieu of Section 10115, Revised Statutes 1929:

"There is hereby levied a per centum tax on net income in each year as follows: First, for the portion of the year 1931 after June 30, 1931, remaining after this act becomes effective and for the whole of each succeeding year thereafter . . . a tax shall be levied upon, assessed against, collected from, and paid by every individual, a citizen or resident of this state, upon net icome received from all sources during the preceding year in excess of the exemptions now or hereafter provided, and a like tax shall be levied upon, assessed against, collected from, and paid by every individual, not a resident or citizen of this state, upon net income received from all sources within this state, during the preceding year in excess of the exemptions now or hereafter provided . . . The per centum of the tax on net income above referred to, levied upon, assessed against and to be collected and paid as herein provided, shall be determined as follows:

"(a) On incomes in excess of the deductions and exemptions now or hereafter provided, but not exceeding such deductions and exempttions by more than one thousand dollars ($1,000) a rate of one per cent (1%) of each such net income.

"(b) On incomes in excess of the deductions and exemptions now or hereafter provided, and exceeding such deductions and exemptions by more than one thousand dollars ($1,000) but not exceeding such deductions and exemptions by more than two thousand dollars ($2,000) a rate of one and one-half per cent (1½%) of each such net income, less five dollars ($5).

"(c) On incomes in excess of the deductions and exemptions now or hereafter provided, and exceeding such deductions and exemptions by more than two thousand dollars ($2,000) but not exceeding such deductions and exemptions by more than three thousand dollars ($3,000) a rate of two per cent (2%) of each such net income, less fifteen dollars ($15).

"(d) On incomes in excess of the deductions and exemptions now or hereafter provided, and exceeding such deductions and exemptions by more than three thousand dollars ($3,000) but not exceeding such deductions and exemptions by more than five thousand dollars

($5,000) a rate of two and one-half per cent (2½%) of each such net income, less thirty dollars ($30).

"(e) On incomes in excess of the deductions and exemptions now or hereafter provided, and exceeding such deductions and exemptions by more than five thousand dollars ($5,000) but not exceeding such deductions and exemptions by more than seven thousand dollars ($7,000) a rate of three per cent (3%) of each such net income less fifty-five dollars ($55).

"(f) On incomes in excess of the deductions and exemptions now or hereafter provided, and exceeding such deductions and exemptions by more than seven thousand dollars ($7,000) but not exceeding such deductions and exemptions by more than nine thousand dollars ($9,000) a rate of three and one-half per cent (3½%) of each such net income, less ninety dollars ($90).

"(g) On incomes in excess of the deductions and exemptions now or hereafter provided, and exceeding such deductions and exemptions by more than nine thousand dollars ($9,000) a rate of four per cent of each such net income less one hundred thirty-five dollars ($135).

"(i) *Provided, however,* that if the rates on net income hereinbefore levied upon, assessed against and authorized to be collected from and paid by every individual, a citizen or resident of this State . . . be hereafter for any reason declared invalid or inoperative, then and in that event for the portion of the year 1931 after June 30, 1931, remaining after the aforesaid portions of this act would otherwise become effective and for the whole of each succeeding year thereafter, at the time and in the manner now or hereafter provided, a tax shall be levied upon, assessed against, collected from and paid by every individual, a citizen or resident of this State, at the rate of two per cent (2%) of net income, determined as now or hereafter provided, received from all sources during the preceding year, in excess of the exemptions now or hereafter provided."

The foregoing provides for a graduated progressive rate of income tax, and in that respect differs from the original Act, which levied the same rate upon all classes of income. In the Wollbrinck case it was held that the Legislature was empowered to classify the subjects of (income) taxation, and that a tax which was uniform upon all subjects in the same class, though not as between the different classes, did not violate the uniformity provisions of the Constitution, provided the classification was founded in reason. In this case appellant charges that the classification made by New Section 10115 is arbitrary, unreasonable and capricious, and therefore void. This contention presents the principal question for decision on this appeal.

The Amendment divides and classifies net income as follows: (a) Income not exceeding $1,000; (b) the portion of net income in excess of $1,000, not exceeding $2,000; (c) the portion in excess of $2,000,

not exceeding $3,000; (d) the portion in excess of $3,000, not exceeding $5,000; (e) the portion in excess of $5,000, not exceeding $7,000; (f) the portion in excess of $7,000, not exceeding $9,000; and (g) the portion in excess of $9,000. On class $a$ it levies a rate of 1 per cent; on class $b$ a rate of 1½ per cent; on class $c$ a rate of 2 per cent; on class $d$ a rate of 2½ per cent; on class $e$ a rate of 3 per cent; on class $f$ a rate of 3½ per cent; and on class $g$ a rate of 4 per cent. These divisions of income and their allocation to classes constitute the basis of the classi cation of income taxpayers. For example, if the taxpayer's income falls wholly within the first class, his tax is 1 per cent thereof; if his income exceeds $1,000, but not $2,000, he pays on the first thousand, allocated by the Statute to class $a$, at the rate of 1 per cent and on the remainder, allocated to class $d$, at the rate of 1½ per cent; if his income exceeds $2,000, but not $3,000, he pays on the first thousand at the rate of 1 per cent, on the second at the rate of 1⅓ per cent, and on the remainder at the rate of 2 per cent, and so on. To further illustrate. Suppose A's income is $25,750. Taxes would be levied thereon as follows:

| Income | Rate | Tax |
|---|---|---|
| $1,000 | 1% | $10.00 |
| $1,000 | 1½% | $15.00 |
| $1,000 | 2% | $20.00 |
| $2,000 | 2½% | $50.00 |
| $2,000 | 3% | $60.00 |
| $2,000 | 3½% | $70.00 |
| $16,750 | 4% | $670.00 |

Total net income $25,750                    Total tax $895.00

The Statute, however, affords a method of computation much simpler than the above. Taking the same income and applying the statutory method the tax thereon would be derived as follows:

| Class | Income | Rate | Amount | Ded'n. | Tax |
|---|---|---|---|---|---|
| g | $25,750 | 4% | $1,030.00 | $135.00 | $895.00 |

Whichever method is used the result is the same. All persons having the same net income are required to pay precisely the same amount of tax. To the extent that their incomes fall within the same brackets all persons pay the same tax.

The statute not only classifies income, in the manner hereinbefore indicated, but as stated it effects a corresponding classification of income taxpayers. From our analysis of the statute it is obvious that the tax required to be levied under it is uniform, and not discriminatory, as between taxpayers in the same class.

The statutory classification puts net income into narrow brackets and then applies to each successive bracket after the first, in an

ascending scale, a rate of taxation slightly larger than the rate applicable to the preceding bracket. Is such classification invalid, because arbitrary and unreasonable? It is similar to the classifications upon which rest all systems of income taxation having a progressive feature. The basic principle underlying all such classifications is the ability of the taxpayer to pay. Many economists and students of government regard a progressive tax as more just and equal in point of sacrifice than a proportional one, since persons with large incomes can more readily spare a fixed proportion of their income than those who have difficulty in sustaining themselves upon what they receive each year. This is the fundamental idea carried forward in all schemes for the taxing of incomes in which there is a progressive graduation of the tax, including that of the United States and those of the states of Arkansas, Delaware, Georgia, Idaho, Mississippi, New York, Oregon, North Dakota and South Carolina. [See Income Tax cases, 148 Wis. 456; Featherstone v. Norman, 170 Ga. 370; Diefendorf v. Gallet (Idaho), 10 Pac. (2d) 307; Standard Lbr. Co. v. Pierce, 112 Ore. 314; State ex rel. Knox v. Railroad, 138 Miss. 70; Stanley v. Gates, 179 Ark. 886; Knowlton v. Moore, 178 U. S. 41; Flint v. Stone Tracy Co., 220 U. S. 107.] In view of the general acceptation of the principle, classifications based upon ability to pay cannot for that reason alone be said to be capricious or whimsical. Of course a classification ostensibly resting upon the principle just mentioned could in a given case so clearly evince a hostile discrimination between particular persons and classes that a court would be compelled to hold that it violated the due process and equal protection clauses of the Fourteenth Amendment, but that cannot be affirmed of the classification here in question.

Appellant's contention that New Section 10115 contravenes Section 9 of Article 10 of the Constitution is based upon his view that the fixed deductions mentioned in paragraphs *b* to *g,* inclusive, of the statute are commutations in part of the taxes levied under the provisions of those paragraphs respectively. But as already indicated the making of the deductions, in the amounts and in the manner specified, is but a device for simplifying the computation of the taxes. Its employment dispenses with the use of the tedious bracket method, as illustrated by the computations hereinbefore made of the tax on an income of $25,750. Appellant's contention is without substance.

Appellant's final point is: "The Act of 1931 provides that if the rates therein fixed 'be hereafter for any reason declared invalid or inoperative, then . . . for the portion of the year, 1931, after June 30, 1931,' the two per cent rate shall apply. The amendment thereby becomes contingently retroactive and is a delegation of both legislative and judicial power." Within the contemplation of the Act the only thing that will cause the graduated rates to become "invalid or inoperative" is an adjudication by a court of com-

petent jurisdiction that the provisions of the statute imposing them violate constitutional provisions. The provisions with reference to a flat two per cent rate are not intended to come into effect, unless and until such an adjudication is made. That contingency has not happened, and may never happen. The questions raised by appellant under this head are therefore purely academic. It will be time enough for us to pass upon the validity of the provisions in question when challenged by some one who feels aggrieved through their attempted enforcement.

The judgment of the trial court dismissing plaintiff's bill is affirmed. All concur.