HALE ET AL. *v.* STATE BOARD OF ASSESSMENT AND REVIEW.

No. 16. Argued October 18, 19, 1937.—Decided November 8, 1937.

*Messrs. Alan Loth* and *William L. Hassett,* with whom *Mr. Denis M. Kelleher* was on the brief, for appellants.

*Mr. Clair E. Hamilton,* with whom *Mr. Leon W. Powers* was on the brief, for appellee.

MR. JUSTICE CARDOZO delivered the opinion of the Court. ·

The question is whether interest upon bonds of the State of Iowa or its political subdivisions may be included in the assessment of a tax on the net income of the owners without detracting from earlier exemptions in respect of taxes upon property and without an unconstitutional impairment of the obligation of contract.

Appellants, residents of Iowa, were the owners in 1934 and afterwards of Iowa School District bonds, Iowa Road bonds, Iowa County bonds, and an Iowa Soldiers' Bonus bond, of the face value, aside from interest, of $752,900. The statutes of the state in force when the bonds were issued and when the appellants acquired ownership provide in varying but equivalent terms that such bonds "are not to be taxed," [1] "shall not be taxed," [2] or "shall be

[1] "The following classes of property are not to be taxed: 1. The property of the United States and this state. . . . municipal, school, and drainage bonds. or certificates hereafter issued by any municipality, school district, drainage district or county within the state." Iowa Code Supplement of 1915, § 1304, subd. 1; Code 1935, § 6944, subd. 5.

[2] "Bonds and road certificates . . . shall not be taxed." Acts 38th G. A. c. 237, § 28; Code 1935, § 4753–a13.

exempt from taxation." [3] Iowa was without an income tax when these exemptions were declared. A "Personal Net Income Tax" upon persons resident within the state was imposed for the first time by a statute enacted in 1934. Code 1935, §§ 6943–f4 *et seq.* In the assessment of that tax for 1935 interest on appellants' bonds in the sum of $36,893.75 was included by the State Board of Assessment and Review against appellants' protest that the law, if so applied, impaired the obligation of contracts of exemption. Constitution of the United States, Article I, Sec. 10. By appropriate proceedings the controversy was brought to the Supreme Court of Iowa, where the assessment was upheld. 271 N. W. 168. The court assumed, without deciding, that the statutes of exemption should be treated as giving rise to contracts, and not merely as declarations of a legislative policy subject to revocation at the legislative pleasure. Proceeding on that assumption, the court interpreted the contracts as limited to taxes laid directly upon property in proportion to its value, and not as touching taxes in the nature of an excise upon the net income of an owner. This conclusion was supported by an analysis of the Iowa statutes and a review of Iowa decisions as well as the decisions of this and other courts. The case is here upon appeal. 28 U. S. C. § 344.

We make the same assumption that was made in the state court as to the existence of a contract, without indicating thereby how we would rule upon the point if a ruling were essential. Cf. *New York ex rel. Clyde* v. *Gilchrist,* 262 U. S. 94, 98; *Pacific Co.* v. *Johnson,* 285 U. S. 480, 489; *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379, 386; *Dodge* v. *Board of Education, ante,* p. 74. Essential it is not for the decision of this case if the con-

---

[3] "All bonds issued hereunder [the Soldiers' Bonus Act] shall be exempt from taxation." Acts 39th G. A. c. 332, § 10; Code 1935, § 6944, subd. 22.

tract to be assumed is limited in scope and operation as it was limited below. Whether the limitation should be accepted is thus the pivotal inquiry. The power is ours, when the impairment of an obligation is urged against a law, to determine for ourselves the effect and meaning of the contract as well as its existence. *U. S. Mortgage Co.* v. *Matthews,* 293 U. S. 232, 236; *Funkhouser* v. *Preston Co.,* 290 U. S. 163, 167. Even so, we lean toward agreement with the courts of the state, and accept their judgment as to such matters unless manifestly wrong. *Phelps* v. *Board of Education,* 300 U. S. 319, 322, 323; *Violet Trapping Co.* v. *Grace,* 297 U. S. 119, 120; *Tampa Water Works Co.* v. *Tampa,* 199 U. S. 241, 243, 244; *Dodge* v. *Board of Education, supra.* For reasons to be developed, obvious error is not discernible in the ruling of the highest court of Iowa that the statutory exemptions invoked by the appellants were not intended to include taxes upon the net income derived from business or investments. To the contrary the decision has support in the statutory system of taxation viewed in its entirety, in state decisions both in the courts of Iowa and elsewhere before the bonds were bought and afterwards, and even indeed in decisions of this court. Our search is for something more than the meaning of a property tax or an excise in the thought of skilled economists or masters of finance. It is for the meaning that at a particular time and place and in the setting of a particular statute might reasonably have acceptance by men of common understanding.

1. The limitation affixed to the contracts of exemption has support, first of all, in the statutory system of taxation considered as a whole.

Of the total interest ($36,893.75) collected on appellants' bonds, the greater portion ($32,776.25) is protected, if at all, by reason of the exemption given to bonds issued by any school district or county within the state. That exemption may best be studied as it stood in the Supple-

mental Code of 1915.[4]  It was then subdivision 1 of § 1304.
There were other subdivisions exempting other items:—
the grounds and buildings for public libraries; household
furniture up to a prescribed value; the farming utensils
of any person who makes his livelihood by farming; and
many other kinds of property.  The section opens with
the statement that "the following classes of property are
not to be taxed," and then enumerates the classes.  But
the scope of the exemption is likely to be exaggerated un-
less the next preceding section (1303) is read at the
same time.  "The board of supervisors of each county
shall, annually, at its September session, levy the follow-
ing taxes upon the assessed value of the taxable prop-
erty in the county," a mandate clearly addressed to the
levy of *ad valorem* taxes only.  The inference is a fair one
that § 1304 did not exempt the items there enumerated
from taxation of every form and for every purpose.  It
withdrew them from the operation of the levy com-
manded by the section next preceding.[5]  True, in later
compilations of the statutes, the sections have been re-
arranged, though with substance unaffected.  Cf. Code,
1935, § 6953.  In the Code of 1935, subdivision 1 of
§ 1304 is subdivision 5 of § 6944; § 1303 is § 7171.  There
can be little doubt that the meaning remains what it
was before.  *United States* v. *Ryder,* 110 U. S. 729, 740;
*United States* v. *Sischo,* 262 U. S. 165, 168, 169; *Warner*
v. *Goltra,* 293 U. S. 155, 161; *Davis* v. *Davis,* 75 N. Y. 221,

---

[4] Compare Code of 1851, § 455; Code of 1873, § 797; Code of 1897,
§ 1304.

[5] An earlier form of the same statute, after providing, like the later
one, that "the following classes of property are not to be taxed,"
adds the significant words, "and they may be omitted from the as-
sessments herein required." Code of 1873, § 797. The opinion in *Sioux
City* v. *Independent School District,* 55 Iowa 150, 151, 152; 7 N. W.
488, refers to these words as emphasizing the conclusion that exemp-
tion relates to taxes on the value of the property. The 1851 Code
provision is almost identical.

225, 226; *Fifth Avenue Bldg. Co.* v. *Kernochan*, 221 N. Y. 370, 375; 117 N. E. 579; *Mitchell* v. *Simpson*, L. R. 25 Q. B. D. 183, 189.

Besides the school and county bonds, appellants were the owners of a Soldiers' Bonus bond in the sum of $1,000, and Road bonds or certificates to the amount of $82,000. The exemption of the Bonus bond was declared by the statute authorizing the issue. 39th G. A., c. 332, § 10, adopted March 23, 1921. The exemption is now subdivision 22 of § 6944 of the Code of 1935, and should be given the same meaning as the exemption conferred by the other subdivisions. The Road bonds or certificates have their exemption under a different statute (§ 4753a13, Codes of 1931 and 1935), but the bonds are expressly declared to be obligations of the county (§ 4753a14), and, as the court below observed, there is no reason to suppose that the exemption given them was broader than that of county obligations generally.

2. The meaning of the Iowa statutes is clarified, if otherwise uncertain, by the opinions of the Iowa court in this and other cases.

The court in its opinion in this case applied the general principle that contracts of tax exemption must receive a strict construction. The teaching of this court has been always to the same effect. "Grants of immunity from taxation in derogation of a sovereign power of the state, are strictly construed." *Pacific Co.* v. *Johnson*, 285 U. S. 480, 491, citing many cases. Adhering to that principle, the Iowa court held that the tax exemption was limited to taxes upon property, and could not be extended to taxes in the nature of an excise. For this restriction it found support in its own earlier decisions, rendered many years before appellants' bonds were purchased. Thus, *Sioux City* v. *Independent School District*, 55 Iowa 150; 7 N. W. 488, decided in 1880, and *E. & W. Construction Co.* v. *Jasper County*, 117 Iowa 365; 90 N. W. 1006, de-

cided in 1902, held the exemption inapplicable to special assessments, limiting it at the same time "to the taxes contemplated in title 6 of the Code." [6] So also *Iowa Mutual Tornado Ins. Assn.* v. *Gilbertson,* 129 Iowa 658; 106 N. W. 153, decided in 1906, interpreting a different subdivision of the exemption statute, but a cognate one, again limited the exemption to taxes upon property, and refused to apply it to an excise or license tax measured by receipts. The ruling was reiterated in *State* v. *City of Des Moines,* 221 Iowa 642; 266 N. W. 153, decided in 1936, upon facts not greatly different. Cf. *Plummer* v. *Coler,* 178 U. S. 115. From these precedents the Iowa court advanced to the holding, announced in the case at bar, that a tax upon net income was substantially an excise, and hence did not come within the scope of an exemption confined to taxes upon property. The result was conceived to be latent in the precedents if effect was to be given to their fair implications. "So the state court has told us," construing its own decisions, "and the good faith of its declaration is not successfully impeached." *Stockholders* v. *Sterling,* 300 U. S. 175, 183.

3. The ruling that a tax upon net income is without the scope of the exemption cannot be adjudged unreasonable, for it will be found to be supported by decisions in many other states, and even, indeed, by decisions of this court.

(a) The question as to the nature of such a tax has come up repeatedly under state constitutions requiring taxes upon property to be equal and uniform, or imposing similar restrictions. Many, perhaps most, courts hold that a net income tax is to be classified as an excise.[7]

---

[6] The Code in force at that time was the one of 1873.

[7] *Sims* v. *Ahrens,* 167 Ark. 557; 271 S. W. 720; *Stanley* v. *Gates,* 179 Ark. 886; 19 S. W. (2d) 1000; *Waring* v. *Savannah,* 60 Ga. 93, 100; *Featherstone* v. *Norman,* 170 Ga. 370, 379; 153 S. E. 58; *Diefendorf* v. *Gallet,* 51 Idaho 619, 627; 10 P. (2d) 307; *Miles* v. *Department of Treasury,* 199 N. E. 372 (Ind.); *Opinion of the Justices,*

"The tax levied on income is not a property tax, but is a percentage laid on the amount which a man receives, irrespective of whether he spends it, wastes it, or invests it." *Featherstone* v. *Norman,* 170 Ga. 370, 382; 153 S. E. 58; *Purnell* v. *Page,* 133 N. C. 125, 129; 45 S. E. 534. As early as 1870, the Supreme Court of Iowa had written an opinion which foreshadows the same thought. *Dubuque* v. *Northwestern Life Ins. Co.,* 29 Iowa 9. Cf. *Vilas* v. *Iowa State Board of Assessment and Review,* 273 N. W. 338. True, there are courts in other states that teach a different doctrine.[8] Our duty does not call upon us to determine which view we would accept as supported by the better reason.if the choice were an original one for us, unaffected by the view accepted in the court below. Enough for present purposes that with authority so nearly balanced the Iowa construction of the contract is at least not plainly wrong. The propriety of our keeping to it is the clearer when we bear in mind that there were Iowa

---

133 Me. 525, 528; 178 Atl. 820; *Hattiesburg Grocery Co.* v. *Robertson,* 126 Miss. 34, 52; 88 So. 4; *Ludlow-Saylor Wire Co.* v. *Wollbrinck,* 275 Mo. 339, 351; 205 S. W. 196; *Bacon* v. *Ranson,* 331 Mo. 985, 990; 56 S. W. (2d) 786; *O'Connell* v. *State Board of Equalization,* 95 Mont. 91, 112; 25 P. (2d) 114; *Mills* v. *State Board of Equalization,* 97 Mont. 13, 17; 33 P. (2d) 563; *Maxwell* v. *Kent-Coffey Mfg. Co.,* 204 N. C. 365, 371; 168 S. E. 397; *Hunton* v. *Commonwealth,* 166 Va. 229, 243; 183 S. E. 873; *Van Dyke* v. *State Tax Comm'n,* 217 Wis. 528, 535; 259 N. W. 700; 4 Cooley on Taxation, 4th ed., § 1743. Many cases are collected in Brown, The Nature of the Income Tax, 17 Minn. L. Rev. 127, 130, 139.

[8] *Eliasberg Bros. Mercantile Co.* v. *Grimes,* 204 Ala. 492; 86 So. 56; *Bachrach* v. *Nelson,* 349 Ill. 579, 595; 182 N. E. 909; *Opinion of the Justices,* 220 Mass. 613, 624; 108 N. E. 570; 266 Mass. 583, 585; 165 N. E. 900; *Harrison* v. *Commissioner of Corporations,* 272 Mass. 422, 427; 172 N. E. 605; *Redfield* v. *Fisher,* 135 Ore. 180, 192; 292 Pac. 813; *Kelley* v. *Kalodner,* 320 Pa. St. 180, 185; 181 Atl. 598; *Culliton* v. *Chase,* 174 Wash. 363; 25 P. (2d) 81; *Jensen* v. *Henneford,* 185 Wash. 209, 216; 53 P. (2d) 607.

decisions pointing the same way before appellants became owners.

(b) Finally, and even more conclusively, decisions of our own court forbid us to stigmatize as unreasonable the classification of a tax upon net income as something different from a property tax, if not substantially an excise. *New York ex rel. Clyde* v. *Gilchrist,* 262 U. S. 94; *New York ex rel. Cohn* v. *Graves,* 300 U. S. 308; *Brushaber* v. *Union Pacific R. Co.,* 240 U. S. 1, all point in that direction. We will consider them in the order stated.

The taxpayer in *New York ex rel. Clyde* v. *Gilchrist* claimed the benefit of an exemption under a statute of New York to the effect that, upon payment of a recording tax, debts and obligations secured by mortgages of real property should be exempt from other taxation by the state and local subdivisions. The question was whether the exemption thus accorded was applicable to an income tax enacted long afterwards. The state court ruled against the taxpayer (*People ex rel. Central Union Trust Co.* v. *Wendell,* 197 App. Div. 131; 188 N. Y. S. 344; *People ex rel. Clyde* v. *Wendell,* 197 App. Div. 913; 187 N. Y. S. 949; 232 N. Y. 550; 134 N. E. 567), assuming the existence of a contract of exemption, but holding that it was not intended to apply to taxes upon income. This court, considering the fact that at the date of the exemption statute "no one thought of an income tax," and recalling that "any contract of exemption must be shown to have been indisputably within the intention of the Legislature," sustained the judgment of the state court. "The conclusion does not seem to us very difficult to reach." 262 U. S. at p. 98.

The controversy in *New York ex rel. Cohn* v. *Graves,* decided at the last term, evoked a ruling by this court that a state tax upon net income which included rents derived from land in another state, was not equivalent to a property tax imposed upon the land itself. "The inci-

dence of a tax on income differs from that of a tax on property. Neither tax is dependent upon the possession by the taxpayer of the subject of the other. His income may be taxed, although he owns no property, and his property may be taxed although it produces no income." 300 U. S. at p. 314. *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429; 158 U. S. 601, was considered and distinguished. Two rulings emerge as a result of the analysis. By the teaching of the *Pollock* case an income tax on the rents of land (157 U. S. 429) or even on the fruits of other investments (158 U. S. 601) is an impost upon property within the section of the Constitution (Art. I, sec. 2, cl. 3) governing the apportionment of direct taxes among the states. 300 U. S. at p. 315. By the teaching of the same case an income tax, if made to cover the interest on government bonds, is a clog upon the borrowing power such as was condemned in *McCulloch* v. *Maryland,* 4 Wheat. 316, and *Collector* v. *Day,* 11 Wall. 113, 124. 300 U. S. at pp. 315, 316. There was no holding that the tax is a property one for every purpose or in every context. We look to all the facts.

In line with that conception of the *Pollock* case is *Brushaber* v. *Union Pacific R. Co., supra,* where the court pointed out (240 U. S. at pp. 16, 17) that "the conclusion reached in the *Pollock Case* did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property," but that to the contrary such taxes were enforcible as excises except to the extent that violence might thus be done to the spirit and intent of the rule governing apportionment.

The doctrine of these decisions, we think, is applicable here. We do not overlook the argument that the promise to pay interest may be part of the obligation of a contract as much as the promise to pay principal. To concede this counts for little if the distinction between an

excise and a property tax, or between the different meanings of a property tax, is not permitted to escape us. Unless the foregoing analysis is faulty, the tax complained of by appellants is not laid upon the obligation to pay the principal or interest created by the bonds, at all events within the meaning of the contract of exemption. The tax is laid upon the net results of a bundle or aggregate of occupations and investments. Under a statute so conceived and framed a man may own a quantity of state and county bonds and pay no tax whatever. The returns from his occupation and investments are thrown into a pot, and after deducting payments for debts and expenses as well as other items, the amount of the net yield is the base on which his tax will be assesssed. Cf. *United States Glue Co.* v. *Oak Creek*, 247 U. S. 321, 329. In the light of all the precedents brought together in this opinion, we cannot say that a tax assessed on such a base is a plain violation of any contract of exemption to be discovered in the laws of Iowa.

Doubtless a contract of exemption can be phrased in such terms as to forbid the imposition of a net income tax or indeed a tax of any sort. Bonds issued by the Government of the United States are sometimes exempt by their express terms from income taxes to any degree (40 Stat. 35, § 1), sometimes from income taxes other than surtaxes or excess profits taxes. 40 Stat. 288, 291, § 7. Such were the Liberty Bonds considered by this court in *Macallen Co.* v. *Massachusetts*, 279 U. S. 620. Broad also was the exemption given to the Federal Farm Loan bonds considered in the same case, at least in respect of taxes levied by the states, for the bonds were declared expressly to be federal instrumentalities. 39 Stat. 360, 380, § 26. Less clear and comprehensive was the exemption of the Massachusetts bonds declared by a Massachusetts statute (Mass. G. L. c. 59, § 5) and dealt with more or less summarily at the end of the opinion. 279

U. S. at p. 634. However, the courts of Massachusetts had already rejected the contention that an income tax was to be classified as an excise rather than a tax on property. *Opinion of the Justices,* 220 Mass. 613, 624; 108 N. E. 570; 266 Mass. 583, 585; 165 N. E. 900; *Harrison* v. *Commissioner of Corporations,* 272 Mass. 422, 427; 172 N. E. 605. The meaning of the exemption was properly ascertained in subjection to that ruling. Cf. *Educational Films Corp.* v. *Ward,* 282 U. S. 379, and *Pacific Co.* v. *Johnson, supra.*

Nothing in this opinion is at war with *Weston* v. *Charleston,* 2 Pet. 449, or other cases declaring the immunities of governmental agencies. In the case cited and its congeners the problem for decision was whether a tax upon income, even though not a property tax in strictness or for every purpose, was one in such a sense or in such a measure as to hamper the freedom of the central government through the interference of the states or the freedom of the states through the interference of the central government. The limitations declared in those decisions were gathered by implication from the structure of our federal system, and were accommodated, as the court believed, to the public policy at stake. What the court is now concerned with, however, is not the preservation or protection of any governmental function. Iowa cannot be held to cripple in an unconstitutional way her own privileges and powers when she levies an income or even a property tax upon bonds issued by herself. The court is now concerned with the meaning and effect of particular contracts of exemption to be read narrowly and strictly. There is no room at such a time for the freer and broader methods that have been thought to be appropriate in the development of the doctrine of implied restraints.

The judgment is

*Affirmed.*

(Dissenting opinion, p. 110.)

Mr. Justice Sutherland, dissenting.

I think the judgment should be reversed.

At the time the bonds here involved were purchased, the statutes of Iowa expressly provided that they "are not to be taxed" or "shall not be taxed" or "shall be exempt from taxation." These are plain words, and there is no room for construction. When the language is clear, it is conclusive. "There can be no construction where there is nothing to construe." This has been held so often by this court that it has become axiomatic. That the provisions with respect to the non-taxability of the bonds constitute a statutory contract with the purchaser of the bonds, and that any subsequent statute which violates these provisions impairs the obligation of the contract, is not a matter of dispute. The sole question is whether the imposition of an income tax in respect of the interest derived from the bonds is a tax upon the bonds.

We are not concerned with the name given to the tax. The exemption is in unqualified terms, and includes *all* taxes. And I see no warrant for saying that the exemption must be limited to so-called *ad valorem* taxes. The exemption is not in the form or nature of a proviso to the section fixing the time and providing for the levy of such taxes, but is a substantive enactment standing independently and complete in itself. Nor do I see any ground for confining it to taxes then known to the Iowa law. Such an all-embracing exemption cannot be avoided by the invention of a new tax. To me, it seems evident that if any tax be imposed upon the bonds, the contract is impaired. It likewise seems evident that the tax here is imposed on the bonds themselves.

Of what does a bond for the payment of money consist? Certainly not the principal alone; for the promise to pay interest is as much a part of the obligation of the bond as the promise to pay the principal. A bond, for example, promises to pay the bearer at the end of ten years the sum of $1,000, and also interest at the rate of 5% per

annum, to be paid semi-annually; that is to say, promises to pay $25 at the end of every six-months' period, and $1,000 at the end of ten years. There is no difference between the two promises in respect of their binding or legal quality. Both are obligations of the bond. If one cannot be violated, neither can the other.

There is no difference in principle between such a bond and one where the bond is issued upon a discount basis, as in the case of United States Savings Bonds (Treasury Department Circular No. 529, February 25, 1935). A United States Savings Bond for $1,000, payable in ten years "without interest," may be purchased for the sum of $750—the remaining $250 being deferred interest. Plainly, the $250 deferred interest is as much a part of the bond as the $750 originally invested; and a contractual obligation exempting the bond from taxation is equally applicable to each. Is the case different if the bond shall provide for the payment of $750, together with interest in the sum of $250 to be paid in installments or at the end of ten years? Certainly not, unless form is to be exalted and substance ignored.

The force of what has been said cannot be avoided by merely calling the tax an excise. If a tax falls upon the bond and lessens its proceeds, either in respect of principal or interest, it is a tax on the bond, and cannot be made something else by resort to the vocabulary or by employing some circuitous method of imposing it. It is well settled, at least generally, that "what cannot be done directly . . . cannot be accomplished indirectly by legislation which accomplishes the same result." *Fairbank* v. *United States,* 181 U. S. 283, 294, 300, and cases cited. I am unable to subscribe to that philosophy which seems to teach that a forbidden result may nevertheless be achieved if only some delusive and devious way of achieving it can be found.

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER join in this opinion.