MAYNARD WAXENBERG AND NORMA WAXENBERG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5861–71.    Filed August 7, 1974.

*Roy W. Van Der Kamp,* for the petitioners.
*Lewis M. Porter, Jr.,* for the respondent.

OPINION

GOFFE, *Judge:* The Commissioner determined the following deficiencies in petitioners' Federal income tax:

| 1965 | $369. 69 | 1967 | $2, 094. 63 |
| 1966 | 731. 20 | 1968 | 6, 193. 09 |

Petitioners have conceded the correctness of some adjustments made by the Commissioner in his statutory notice of deficiency. The sole issue remaining for our decision is whether petitioners may deduct as a foreign real property tax the tax assessed against them which they paid pursuant to the United Kingdom General Rate Act, 1967, c.9. For convenience we will refer to the taxes provided for by such Act as the "rates tax."

All of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. Only the facts necessary to an understanding of our opinion will be summarized herein.

Petitioners are husband and wife and at the time of filing their petition they resided in Los Angeles, Calif. They filed their Federal income tax returns for the taxable years involved with the Director of International Operations, Internal Revenue Service, Washington, D.C.

During the taxable years involved petitioners resided in London, W.1., England, in leased premises. They were bound by the terms of their lease to pay all rates taxes assessed against the demised premises

or the occupant thereof. The rates tax was assessed against them and they paid such taxes in the following amounts:

| | | | |
|---|---|---|---|
| 1965 | $731 | 1967 | $1,209 |
| 1966 | 1,031 | 1968 | 2,755 |

Petitioners deducted the rates tax on their joint U.S. income tax returns for the years of payment and the Commissioner disallowed such deductions on the grounds that they did not represent taxes as defined in section 164 of the Internal Revenue Code.[1]

Section 164(a)(1) of the Code allows a deduction for foreign real property taxes paid if they are imposed by the authority of a foreign country unless such taxes are assessed against local benefits of a kind tending to increase the value of the property assessed and unless subsection (d) requires that such taxes be treated as imposed upon another taxpayer.

Section 1.164–1(a)(1), Income Tax Regs., allows a deduction for foreign real property taxes paid and section 1.164–1(a)(5) provides that, "In general, taxes are deductible only by the person upon whom they are imposed."

Section 1.164–3(b), Income Tax Regs., defines real property taxes as taxes imposed upon *interests in real property*.

Respondent does not question the authority under which the United Kingdom General Rate Act, 1967, c.9, is imposed nor does he question that the tax is levied for the general public welfare rather than being assessed against local benefits. Respondent contends that the tax is not deductible because it is imposed upon the occupier of the land and is, therefore, a personal charge in respect of the land, not a tax imposed on an interest in real property. Respondent's position is set forth in Rev. Rul. 73–600, 1973–2 C.B. 47.

The parties have stipulated certain English statutes and have also agreed that we may take judicial notice of other statutory and case materials and secondary authority such as Ryde, Rating (12th ed. 1968), and C. D. Bailey, The General Rule (2d ed. 1963).

The United Kingdom General Rate Act, 1967, c.9, was enacted to consolidate more than 30 rating and valuation statutes in England and Wales dating back to the Poor Relief Act, 1601, 43 Eliz. 1, c.2.

The pertinent portions of the General Rate Act, 1967, are as follows:

PART I

THE GENERAL RATE

1. Rating areas and rating authorities.

\* \* \* \* \* \* \*

(2) Every rating authority shall have power in accordance with this Act to make and levy rates on the basis of an assessment in respect of the yearly value

---

[1] All Code references are to the Internal Revenue Code of 1954, as amended, applicable to the years before the Court.

of property in their rating area for the purpose of applying the proceeds thereof to local purposes of a public nature.

\*　　\*　　\*　　\*　　\*　　\*　　\*

2. The general rate.—(1) Every rating authority shall from time to time in exercise of their powers under section 1(2) of this Act make such rates as will be sufficient to provide for such part of the total estimated expenditure to be incurred by the authority during the period in respect of which the rate is made as is not to be met by other means or by means of excepted rates, including in that expenditure any sums payable to any other authority under precepts issued by that other authority, together with such additional amount as is in the opinion of the rating authority required to cover expenditure previously incurred, or to meet contingencies, or to defray any expenditure which may fall to be defrayed before the date on which the moneys to be received in respect of the next subsequent rate made under this subsection will become available.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) Any rate made by a rating authority under subsection (1) of this section shall be made and levied as a single consolidated rate for the whole of their rating area which shall be termed "the general rate" and be in lieu of any other rates such as are mentioned in section 1(2) of this Act which that authority have power to make other than excepted rates.

(4) Subject to the provisions of this Act, the general rate for any rating area—

(a) shall be a rate at a uniform amount per pound on the rateable value of each hereditament in that area, except that where any amount is, by virtue of any precept or otherwise, chargeable separately on part only of a rating area, the rating authority shall levy that amount on that part of the area together with, and as an additional item of, the general rate ;

(b) shall be made and levied in accordance with the valuation list in force for the time being, \* \* \*

## PART III

### LIABILITY, VALUATION, RELIEFS, ETC.

#### Liability and assessment to rate

16. Liability to be rated in respect of occupation of property.—Subject to the provisions of this Act, every occupier of property of any of the following descriptions, namely—

(a) lands;

(b) houses;

(c) coal mines;

(d) mines of any other description, other than a mine of which the royalty or dues are for the time being wholly reserved in kind ;

(e) any right of sporting (that is to say, any right of fowling, of shooting, of taking or killing game or rabbits, or of fishing) when severed from the occupation of the land on which the right is exercisable,

shall be liable to be assessed to rates in respect of the hereditament or hereditaments comprising that property according to the rateable value or respective rateable values of that hereditament or those hereditaments determined in accordance with the provisions of this Act.

\*　　\*　　\*　　\*　　\*　　\*　　\*

18. General provisions as to liability and assessment to rate.—(1) The following general provisions shall have effect with respect to the assessment of

persons to, and their liability in respect of, a rate in respect of any hereditament for any rate period.

(2) A person who is in occupation of the hereditament for part only of the rate period shall, subject to the provisions of this section, be liable to be charged with such part only of the total amount of the rate as the number of days during which he is in occupation bears to the total number of days in that period.

(3) A person who is in occupation of the hereditament for any part of the rate period may be assessed to the rate in accordance with the provisions of subsection (2) of this section notwithstanding that he ceased to be in occupation before the rate was made.

(4) A person who is in occupation of the hereditament at any time after the rate is made may be assessed to and shall in the first instance be liable to pay—

(a) if he was in occupation at the beginning of the rate period, the whole of the amount charged in respect of that hereditament; or

(b) if he came into occupation subsequently, a proportion of the amount aforesaid calculated on the basis that he will remain in occupation until the end of the rate period,

but shall, if he goes out of occupation before the end of that period, be entitled to recover from the rating authority any sum paid by him in excess of the amount properly chargeable against him in accordance with the provisions of subsection (2) of this section, except in so far as he has previously recovered that sum from an incoming occupier.

(5) In relation to any rate to which section 177 of the City of London Sewers Act 1848 (which relates to the rating of empty houses in the City of London) applies, the foregoing provisions of this section shall have effect subject to the provisions of the said section 177, and any amount in respect of any such rate which any person is required by the said section 177 to pay or allow in respect of any period during which a hereditament is unoccupied shall be allowed to the rating authority in computing any sum which that person is entitled to recover from the authority in respect of that hereditament under subsection (4) of this section.

(6) Where the name of any person liable to be rated as occupier of any premises is not known to the rating authority, it shall be sufficient to assess him to the rate by the description of the "occupier" of the premises (naming them) in respect of which the assessment is made, without further name or description.

Valuation of hereditaments—general provisions

19. Ascertainment of rateable value—general rule.—(1) Subject to the provisions of this Part of this Act and of any scheme for the time being in force such as is mentioned in section 117(7) of this Act, the rateable value of a hereditament shall be taken to be the net annual value of that hereditament ascertained in accordance with subsections (2) to (4) of this section.

(2) In the case of a hereditament consisting of one or more houses or other non-industrial buildings, with or without any garden, yard, court, forecourt, outhouse or other appurtenance belonging thereto, but without other land, the net annual value of the hereditament shall be ascertained by deducting from its gross value such amount, or an amount calculated in such manner, as may for the time being be specified by the Minister by order in relation to the class of such hereditaments to which the hereditament in question belongs.

(3) The net annual value of any other hereditament shall be an amount equal to the rent at which it is estimated the hereditament might reasonably

be expected to let from year to year if the tenant undertook to pay all usual tenant's rates and taxes and to bear the cost of the repairs and insurance and the other expenses, if any, necessary to maintain the hereditament in a state to command that rent.

     *        *        *        *        *        *        *

(6) In this section, the following expressions have the following meanings respectively, that is to say—

"appurtenance", in relation to a dwelling, or to a school, college or other educational establishment, includes all land occupied therewith and used for the purposes thereof;

"gross value", in relation to a hereditament, means the rent at which the hereditament might reasonably be expected to let from year to year if the tenant undertook to pay all usual tenant's rates and taxes and the landlord undertook to bear the cost of the repairs and insurance and the other expenses, if any, necessary to maintain the hereditament in a state to command that rent;

     *        *        *        *        *        *        *

## PART IV

### BEARING OF RATES BY PERSONS OTHER THAN OCCUPIER

55. Rating of owners instead of occupiers.—(1) Any rating authority may by resolution direct that, in the case of all hereditaments in their area which belong to a class to be defined in the resolution by reference to rateable value and also, if rent is paid and the rating authority so decide, by reference to the interval at which rent from time to time becomes payable or is collected, the owners thereof shall be rated instead of the occupiers:

Provided that the class shall not be so defined as to include any hereditaments the rateable value of which exceeds fifty-six pounds or such other limit as may for the time being be fixed by an order under subsection (5) of this section.

(2) Where a rating authority give any such direction as aforesaid, the owners of any hereditaments in that authority's rating area to which the direction applies shall, in the case of any rate made while the resolution is in force, be rated accordingly, and the rating authority shall make to any owner who being so rated pays the amount due from him in respect of the rate before the expiration of half the period in respect of which the rate was made (or, if the rate is payable by instalments, half the period in which the instalment is payable), or before such later date or dates as may be specified in the resolution, an allowance equal to ten percent of the amount payable.

(3) A resolution of the rating authority rescinding a previous resolution under subsection (1) of this section shall take effect only on the expiration of a rate period.

(4) Any owner who under subsection (2) of this section pays any rate which, as between the owner and the occupier, the occupier is liable to pay shall be entitled to be reimbursed by the occupier the amount so paid.

     *        *        *        *        *        *        *

59. Deduction from rent of rates omitted to be paid by owner.—Where an owner who has undertaken, whether by agreement with the occupier or with the rating authority, to pay rates, or has otherwise become liable to pay rates, omits or neglects to pay any rate, the occupier may pay that rate and deduct the amount of the payment from the rent due or accruing due to the owner, and the receipt for the rate shall be a valid discharge of the rent to the extent of the rate so paid.

60. Owner's liability for rates where occupier entitled to diplomatic immunity.—(1) Without prejudice to the operation of any other provision of this Act, where—

(a) any hereditament in a rating area in Greater London is occupied upon terms which provide that the owner shall pay the rate charged on that hereditament; and

(b) the occupier of the hereditament would in any proceedings against him by the rating authority to enforce payment of the rate be entitled to claim diplomatic immunity,

the owner shall be liable to pay to the rating authority an amount equal to so much of any payment in respect of rent received by him from the occupier as represents the proportion of rate included in that payment, and that amount may be recovered from the owner in the same manner and subject to the same conditions as rates recovered from the occupiers of rated hereditaments.

(2) In this section—

(a) the expression "diplomatic immunity" means immunity from suit and legal process which is accorded by law to an envoy or other public minister of a foreign sovereign power accredited to Her Majesty, or to the family or official or domestic staff of such an envoy or minister or to the families of any such staff, and includes any like immunities and any exemption or relief from rates which is conferred on any person or organisation by or under the Diplomatic Privileges Act 1964;

(b) The expression "owner" in relation to a hereditament includes any person who receives any rent of the hereditament whether on his own account or as agent or trustee for another person.

61. Recovery of rates from tenants and lodgers.—(1) Where the rates due from the person rated for any hereditament are in arrear, it shall be lawful for the rating authority to serve upon any person paying rent in respect of that hereditament, or any part thereof, to the person from whom the arrears are due a notice stating the amount of those arrears of rates and requiring all future payments of rent (whether already accrued due or not) by the person paying the rent to be made direct to the rating authority until those arrears shall have been duly paid; and that notice shall, subject to subsection (2) of this section, operate to transfer to the rating authority the right to recover, receive and give a discharge for that rent.

(2) The right of the rating authority to recover, receive and give a discharge for any rent by virtue of subsection (1) of this section shall be postponed to any right in respect of that rent which may at any time be vested in a superior landlord by virtue of a notice under section 6 of the Law of Distress Amendment Act 1908.

(3) In this section, the expression "rent" includes a payment made by a lodger.

62. Recovery of rates unpaid by owner.—Notwithstanding that the owner of a hereditament has become liable for payment of the rates assessed thereon, the goods and chattels of the occupier shall be liable to be distrained and sold under Part VI of this Act for payment of such rates as may accrue during his occupation of the hereditament at any time while those rates remain unpaid by the owner, except that—

(a) no such distress shall be levied unless the rate has been demanded in writing by the rating authority from the occupier and the occupier has failed to pay it within fourteen days of the service of that demand;

(b) no greater sum shall be raised by the distress than shall at the time of making the distress be actually due from the occupier for rent of the premises on which the distress is made;

(c) the occupier shall be entitled to deduct the amount of rates for which the distress is made, and the expenses of the distress, from the rent due or accruing due to the owner, and every such payment shall be a valid discharge of the rent to the extent of the rates and expenses paid.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

## PART V

## VALUATION LISTS

### Maintenance of, and preparation of new, valuation lists

67. The valuation list.—(1) For the purposes of rates, there shall be maintained for each rating area a valuation list prepared, and from time to time caused to be altered, in accordance with the provisions of this Part of this Act by the valuation officer.

(2) Subject to the provisions of this Act, there shall be inserted in the valuation list such particulars as may be prescribed—

(a) with respect to every hereditament in the rating area and the value thereof;

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

### Alterations of current valuation list

69. Proposals for alteration of current valuation list.—(1) Subject to subsection (6) of this section, any person (including a rating authority) who is aggrieved—

(a) by the inclusion of any hereditament in the valuation list; or

(b) by any value ascribed in the list to a hereditament or by any other statement made or omitted to be made in the list with respect to a hereditament; or

(c) in the case of a building or portion of a building occupied in parts, by the valuation in the list of that building or portion of a building as a single hereditament,

may at any time make a proposal for the alteration of the list so far as it relates to that hereditament.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(3) Without prejudice to any right exercisable by rating authorities by virtue of subsection (1) of this section, where—

(a) it appears to a rating authority that a hereditament in their rating area which is not included in the list ought to be included therein; and

(b) the valuation officer gives notice in writing to the rating authority that he does not intend to make a proposal for inserting that hereditament in the list,

the rating authority, at any given time within twenty-eight days after the date on which that notice was given, may make a proposal for the alteration of the list by the insertion of that hereditament therein.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

## PART VI

## DISTRESS FOR RATES

96. Enforcement of payment of rates.—(1) Subject to section 62 of this Act and to subsection (2) of this section, if any person fails to pay any sum legally assessed on and due from him in respect of a rate for seven days after it has

been legally demanded of him, the payment of that sum may, subject to and in accordance with the provisions of this Part of this Act, be enforced by distress and sale of his goods and chattels under warrant issued by a magistrates' court; and, if there is insufficient distress, he may be liable to imprisonment under the provisions of this Part of this Act in that behalf.

\* \* \* \* \* \* \*

115. Interpretation.—(1) In this Act, except where the context otherwise requires, the following expressions have the following meanings respectively, that is to say—

\* \* \* \* \* \* \*

"owner"—

(a) except in, or in connection with, section 49, 50, 55 or 56 of this Act and except in section 60 of or Schedule 1 to this Act, means any person for the time being receiving or entitled to receive the rack-rent of the lands or premises in connection with which the word is used, whether on his own account or as agent or trustee for any other person, or who would so receive or be entitled to receive that rent if the lands or premises were let on a rack-rent;

(b) in, or in connection with, the said section 49, 50, 55 or 56, means the person who is, or if the hereditament in connection with which the word is used were occupied would be, entitled to receive the rent payable in respect thereof or, where that hereditament is occupied free of rent, the person by whose permission it is so occupied;

The provisions quoted above make it apparent that the rates tax is distinctive and, in many respects, based on concepts different from taxes imposed by the various taxing authorities in the United States.

We are called upon to determine whether the rates tax is a real property tax and, therefore, deductible under section 164(a)(1) of the Code. We have been directed to no cases nor have we discovered any in which this question has been presented. There is no legislative history to shed light on what Congress intended. Section 1.164–3(b), Income Tax Regs., defines a foreign real property tax as one imposed upon "interests in real property" and respondent argues that the rates tax is imposed upon the occupier of the property, not the property itself. He concludes that the tax is, therefore, not deductible because the occupier owns no interest in real property.

The English law does not characterize the rates tax as a property tax and even if it did, such characterization would be only one factor in deciding whether the rates tax is a real property tax. *Biddle* v. *Commissioner*, 302 U.S. 573 (1938). The Supreme Court in *Biddle* had before it the question of whether the British income tax imposed upon corporations could be claimed as a foreign tax credit by United States taxpayers receiving dividends from such corporations. The Court first analyzed section 131 of the Revenue Act of 1928 which allowed a credit for the foreign income taxes paid. It stated at pages 578–579:

At the outset it is to be observed that decision must turn on the precise meaning of the words in the statute which grants to the citizen taxpayer a credit for

foreign "income taxes paid." The power to tax and to grant the credit resides in Congress, and it is the will of Congress which controls the application of the provisions for credit. The expression of its will in legislation must be taken to conform to its own criteria unless the statute, by express language or necessary implication, makes the meaning of the phrase "paid or accrued," and hence the operation of the statute in which it occurs, depend upon its characterization by the foreign statutes and by decisions under them. Cf. *Crew Levick Co.* v. *Pennsylvania*, 245 U.S. 292, 294; *Weiss* v. *Weiner*, 279 U.S. 333, 337; *Burnet* v. *Harmel*, 287 U.S. 103, 110.

Section 131 does not say that the meaning of its words is to be determined by foreign taxing statutes and decisions, and there is nothing in its language to suggest that in allowing the credit for foreign tax payments, a shifting standard was adopted by reference to foreign characterizations and classifications of tax legislation. The phrase "income taxes paid," as used in our own revenue laws, has for most practical purposes a well understood meaning to be derived from an examination of the statutes which provide for the laying and collection of income taxes. It is that meaning which must be attributed to it as used in section 131.

The allowance of a deduction for foreign real property taxes is provided for in section 164(a) (1) of the Code, which also allows deductions for State and local property taxes. Congress expressed no intent that a foreign property tax should be examined as such under foreign law; therefore, it is appropriate to examine it under the concepts of United States law and the law of jurisdictions which impose State and local property taxes.

The characterization of taxes in the United States is derived from article 1, section 8, of the Constitution which grants to Congress the power to "lay and collect taxes, duties, imposts and excises" and section 2 of article 1 which requires that "direct" taxes must be apportioned. A body of case law has developed on the constitutionality of various taxes to determine whether they are "direct taxes" or whether they are "excises."

In *Bromley* v. *McCaughn*, 280 U.S. 124 (1929), the Supreme Court decided that the gift tax on inter vivos transfers in contemplation of death was not unconstitutional as a direct tax because it was an excise imposed upon a limited exercise of property rights. Quotations from the opinion in that case establish what is meant by a property tax:

The meaning of the phrase "direct taxes" and the historical background of the constitutional requirement for their apportionment have been so often and exhaustively considered by this Court, *Hylton* v. *United States*, 3 Dall. 171; *Pollock* v. *Farmers Loan & Trust Company*, 157 U.S. 429, 158 U.S. 601; *Knowlton* v. *Moore*, 178 U.S. 41; *Nicol* v. *Ames*, 173 U.S. 509, 515, that no useful purpose would be served by renewing the discussion here. Whatever may be the precise line which sets off direct taxes from others, we need not now determine. While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, *Pollock* v. *Farmers Loan & Trust Company*, 157 U.S. 429, 158 U.S. 601, this Court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or

the exercise of a single power over property incidental to ownership, is an excise which need not be apportioned, and it is enough for present purposes that this tax is of the latter class. * * *

It [an excise] is a tax laid only upon the exercise of a single one of those powers incident to ownership, the power to give the property owned to another. Under this statute all the other rights and powers which collectively constitute property or ownership may be fully enjoyed free of the tax. * * *

It is true that in each of these cases the tax [an excise] was imposed upon the exercise of one of the numerous rights of property, but each is clearly distinguishable from a tax which falls upon the owner merely because he is owner, regardless of the use or disposition made of his property. See *Billings* v. *United States, supra;* cf. *Pierce* v. *United States*, 232 U.S. 290. The persistence of this distinction and the justification for it rest upon the historic fact that taxes of this type were not understood to be direct taxes when the Constitution was adopted and, as well, upon the reluctance of this Court to enlarge by construction, limitations upon the sovereign power of taxation by Article I, section 8, so vital to the maintenance of the National Government. *Nicol* v. *Ames, supra,* 514, 515.

The distinction drawn between a tax imposed upon the property (a property tax) and a tax imposed upon some, but not all, of the incidents of ownership of property (an excise) leads us to the conclusion that a tax imposed upon the occupancy of real property is an excise rather than a property tax because occupancy is only one of the incidents of ownership and full ownership is required for the tax to be classified as a property tax. This conforms to the reasoning of the Supreme Court in *Bromley* v. *McCaughn, supra,* where the Court points out that the privilege of transferring property by gift is but one of the incidents of ownership and a tax on such privilege is an excise not a property tax.

Because the deduction for State and local property taxes is also provided for in section 164(a)(1) decisions of the State courts which determine whether a tax is a property tax or an excise are persuasive. We think Congress would have us refer to such decisions to determine whether a foreign tax is a property tax or an excise. Such decisions uniformly draw the distinction between a property tax and an excise as the Supreme Court did in *Bromley* v. *McCaughn, supra.* The following cases, although not exhaustive, illustrate the distinctions drawn by the State courts.

Taxes are generally defined as coming within two classes, property taxes and excise taxes, Cooley on Taxation, 4th ed., vol. 1, sec. 46, and excise taxes are variously denominated, such as occupational, licenses, privilege, franchise, and other types which are distinguished from property taxes by one being a tax directly upon the property itself, and the other as a charge for a privilege arising from the use of the property itself, generally intangible in nature. * * * [*Village of Lombard* v. *Illinois Bell Telephone Co.*, 405 Ill. 209, 90 N.E. 2d 105, 108 (1950).]

A tax upon possessory rights is an "excise tax" and not an "ad valorem property tax." *Continental Motors Corp.* v. *Township of Muskegon*, 376 Mich. 170, 135 N.W. 2d 908 (1965).

"The term 'excise tax' has come to mean and include practically any tax which is not an ad valorem tax. An ad valorem tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege." *Callaway* v. *City of Overland Park*, 508 P. 2d 902, 907 (Kan. 1973). We point out that the measure of the rates tax is the rental value of the property which appears to value the privilege of occupying the property rather than the underlying value of the property itself.

The difference between an ad valorem property tax and an excise or occupation tax is principally in the fact that one is direct and the other is indirect.

All taxes, other than polls, are either direct or indirect property taxes. A direct tax is one that is imposed directly upon property, according to its value. It is generally spoken of as a property tax or an ad valorem tax. An indirect tax is a tax upon some right or privilege, or corporate franchise, and is most often called an excise or occupational tax.

An excise and property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted for laying them and fixing their amounts. If a tax is imposed directly by the Legislature without assessment, and its sum is measured by the amount of business done, income previously received, or by the extent to which a taxable privilege may have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of such taxpayer's assets or his investments in business, it is to be regarded as an excise tax. But, if the tax is computed upon the valuation of the property, and assessed by assessors, either where it is situated or at the owner's domicile, although privileges may be included in the valuation, it is considered a property tax. * * * [*City of DeLand* v. *Florida Public Service Co.*, 161 So. 735, 738 (Fla. 1935).]

The Court of Appeals of New York had before it the question of whether the New York City Commercial Rent or Occupancy Tax Law was an ad valorem property tax and, therefore, unconstitutional in *Ampco Printing-Adv. Off. Corp.* v. *City of N.Y.*, 247 N.Y.S. 2d 865, 197 N.E. 2d 285 (1964). The court held that the tax, which was imposed upon commercial businesses occupying real estate, was not a tax on real property. It relied upon *Bromley* v. *McCaughn*, *supra*, and commented as follows:

We are not persuaded by the plaintiffs' contention that the economic impact of the tax is equivalent to a tax on real estate and that, therefore, it should be treated as coming within the constitutional limitation. After observing that ownership of real property includes the right to use it and to lease it for use by others, the plaintiffs conclude that a tax on the use of real estate is a tax on the real estate itself. Such reasoning has been repeatedly rejected. (See, e.g., Bromley v. McCaughn, 280 U.S. 124, 50 S.Ct. 46, 74 L.Ed. 226; New York ex rel. Cohn v. Graves, 300 U.S. 308, 314–315, 57 S.Ct. 466, 468–469, 81 L.Ed. 666; Hale v. Iowa State Board of Assessment and Review, 302 U.S. 95, 107, 58 S.Ct. 102, 106, 82 L.Ed. 72.) Thus, Mr. Justice Stone stated in the Bromley case (280 U.S., at p. 136, 50 S.Ct., at p. 47, 74 L.Ed. 226) :

"While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, Pollock v. Farmers' Loan &

Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759; Id., 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108, this court has consistently held, almost from the foundation of the government, that *a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise* which need not be apportioned, and it is enough for present purposes that this tax is of the latter class. [Emphasis supplied. 280 U.S. at 288.]"

We conclude, therefore, that the United Kingdom General Rate Act, 1967, c.9, is an excise on the privilege of occupying or using real property and does not constitute a foreign real property tax deductible under section 164(a)(1) of the Code.

*Decision will be entered for the respondent.*