T.C. Memo. 1997-295


UNITED STATES TAX COURT



SANDY LAKE ROAD LIMITED PARTNERSHIP, J. STEVE ANDERSON III, TAX
MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9441-95.                    Filed June 30, 1997.


        R determined adjustments to certain of SLR's
partnership items for 1990.  On its 1990 Return of
Partnership Income, SLR categorized as "other
deductions" Texas "rollback" taxes incurred at the time
of disposition of unimproved real property, as well as
related attorney's fees.  R reclassified these items as
deductions related to portfolio income.  See sec.
469(e)(1)(A)(i)(II), I.R.C.  P now asserts that these
items may be used to reduce the amount realized on the
disposition of the property, on the ground that the
rollback tax is not a real property tax within the
meaning of sec. 164(a)(1), I.R.C.  In the alternative,
P disputes R's treatment of the disputed items as
deductions related to portfolio income.

        1.  Held:  The rollback tax is a specifically
enumerated real property tax within the meaning of sec.

164(a)(1), I.R.C., and therefore must be deducted rather than used to offset the amount realized on the disposition of real property. Waxenberg v. Commissioner, 62 T.C. 594 (1974) and Rev. Rul. 80-121, 1980-1 C.B. 43, applied; Rev. Rul. 73-600, 1973-2 C.B. 47, distinguished.

2. Held, further, rollback taxes and attorney's fees related to the determination of such taxes are incurred "in connection with" property from which portfolio income is derived, and are therefore expenses allocable to portfolio income. Sec. 469(e)(1)(A)(i)(II), I.R.C.; sec. 1.469-2T(d)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5716 (Feb. 25, 1988).

J. Steve Anderson III (tax matters partner), pro se.

Gary L. Bloom, for respondent.

MEMORANDUM OPINION

NIMS, Judge: By Notice of Final Partnership Administrative Adjustment (FPAA) dated March 1, 1995, respondent determined adjustments to partnership items for the 1990 taxable year of Sandy Lake Road Limited Partnership (SLR) as follows:

| Partnership Items | As Reported | As Adjusted |
|---|---|---|
| Farm loss | ($4,807) | - 0 - |
| Net long-term capital gain | 874,992 | $1,217,754 |
| Other deductions (Sch. K, line 11) | (422,410) | - 0 - |
| Portfolio deductions | - 0 - | 427,217 |
| Net earnings (loss) self employment | (2,429) | - 0 - |

All section references, except where otherwise specified, are to sections of the Internal Revenue Code in effect for the

year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by both parties, the sole remaining issue for decision is whether certain Texas "rollback" taxes in the amount of $364,576.70 and attorney's fees in the amount of $2,500 comprising a portion of the "Other deductions" on the Schedule K attached to SLR's return may be applied in reduction of the amount realized on the disposition of real property, as asserted by J. Steve Anderson III (petitioner or Anderson), or were properly reclassified as deductions related to so-called portfolio income, see section 469(e)(1)(A)(i)(II); and section 1.469-2T(c)(3)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5716 (Feb. 25, 1988), as determined by respondent.

This case was submitted on a full stipulation of facts, and the facts as stipulated are so found. This reference incorporates herein the stipulation of facts and attached exhibits. SLR is a limited partnership, with its principal place of business located at 5809 NW Grand Boulevard, Suite C, Oklahoma City, Oklahoma, at the time the petition was filed.

## Background

For its taxable year 1990, SLR was subject to the unified audit procedures of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648-667, codified at sections 6221 through 6233. Anderson is its only general partner; he holds a 50.5 percent interest in SLR. Anderson is

also SLR's Tax Matters Partner (TMP).  Three other individuals hold limited partnership interests in SLR totaling 49.5 percent.

SLR was formed under an original partnership agreement dated April 22, 1974, under Texas law.  SLR sold 28.49 acres of undeveloped real estate (the Property) for $1,560,000 in 1990. Of this amount, $450,000 was reserved in connection with a like-kind exchange under section 1031(a).  Respondent concedes that the capital gain on the sale in the amount of $874,992, of which gain $342,762 was deferred under the provisions of section 1031(a), was properly reported.

The Property was designated, or classified for ad valorem tax purposes, as 1-d-1 open-space land under Texas law during all of 1985 and continuing through the date of transfer on October 1, 1990.  For ad valorem tax purposes, 1-d-1 land is assessed at a much reduced value as compared with its nonagricultural use market value.

Section 23.55 of the Tex. Tax Code (West 1992) imposes an additional tax on 1-d-1 land if and when the use of that property changes.  This additional tax is known colloquially as a "rollback tax".  The rollback tax is an additional tax imposed by law as of the date the cessation or change of use occurs.  It has its own delinquency date, and it does not exist until the event that triggers the rollback occurs.

A property owner can trigger the rollback by ending agricultural operations or by diverting the property to a non-

agricultural use.  Selling the property does not trigger the 1-d-1 rollback; rather, it is the determination of a change in use that triggers the rollback.

The calculation of the rollback tax is based upon the difference between "market" and the property's agricultural use value.  (The term "market", as used in Tex. Tax Code Ann. sec. 23.55 (West 1992), appears to be used synonymously with "fair market value.")

The purchaser of the Property, Pulte Home Corporation of Texas (Pulte Home), required SLR to be totally responsible for any and all rollback taxes assessed or to be assessed against the Property and to take all steps necessary to trigger the rollback provisions immediately prior to the date of conveyance of the Property by SLR.

By letter dated September 27, 1990, petitioner notified the Dallas Central Appraisal District, Dallas, Texas, that the agricultural use of the Property was discontinued as of September 25, 1990.  The Dallas Central Appraisal District notified SLR on December 12, 1990, that the Property no longer qualified for open-space assessment and that the Property was subject to rollback taxes.

An escrow account of $450,000 (unrelated to the previously mentioned $450,000 reserved for the like-kind exchange) was established at closing for the purpose of funding the payment of

the rollback taxes.  SLR paid the following rollback taxes in 1990:

| Amount | Taxing Authority |
|---|---|
| $137,233.69 | City of Coppell, Texas |
| 146,617.41 | Coppell Independent School District |
| 53,284.14 | Municipal Utility District |
| 10,746.88 | Dallas County Assessor |
| 16,694.58 | Dallas County Assessor |
| 364,576.70 | Total |

As reflected on the Schedules K-1 attached to and made a part of SLR's 1990 return, SLR distributed the following tax deductions to its partners as "Other Deductions":

| | |
|---|---|
| Investment Expenses - Professional fees | $ 2,830 |
| Investment Expenses - Ad valorem taxes | 419,580 |
| Total | 422,410 |

Of the $419,580 reported as ad valorem taxes, $364,576.70 represents the rollback taxes, and petitioner agrees that the $55,003.30 balance represents an ad valorem tax for which SLR would have been liable regardless of the sale.  Of the $2,830 deducted as professional fees, $2,500 represents an attorney's fees liability incurred in connection with the determination of the rollback taxes.

## Discussion

This case presents an issue, among other things, under the passive loss rules of section 469, and more specifically the provisions of section 469(e)(1)(A), which provides:

(e) Special rules for determining income or loss from a passive activity.--For purposes of this section--

    (1) Certain income not treated as income from passive activity.--In determining the income or loss from any activity--

        (A) In general.--There shall not be taken into account--

            (i) any--

                (I) gross income from interest, dividends, annuities, or royalties not derived in the ordinary course of a trade or business,

                (II) expenses (other than interest) which are clearly and directly allocable to such gross income, and

                (III) interest expense properly allocable to such gross income, and

            (ii) gain or loss not derived in the ordinary course of a trade or business which is attributable to the disposition of property--

                (I) producing income of a type described in clause (i), or

                (II) held for investment.

    For purposes of clause (ii), any interest in a passive activity shall not be treated as property held for investment.

Temporary regulations refer to income described in the above section as "portfolio income". Sec. 1.469-2T(c)(3)(i), Temporary Income Tax Regs., 53 Fed. Reg. 5716 (Feb. 25, 1988).

The passive loss rules were enacted as part of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2085, in response to the Congressional belief that "decisive action * * *

[was] needed to curb the expansion of tax sheltering." S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 714. Portfolio income (which includes gain from the sale of property held for investment, see infra) is not treated as income from a passive activity because such income, even net of expenses, generally will be positive and thus could be used to benefit from tax shelter losses or credits. S. Rept. 99-313, supra, 1986-3 C.B. (Vol. 3) at 728.

Section 469(e)(1)(A)(i)(II) provides that in determining income or loss from a passive activity, expenses (other than interest, which is treated separately), clearly and directly allocable to portfolio income are not to be taken into account.

Section 1.469-2T(d)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5716 (Feb. 25, 1988), provides:

> (4) Clearly and directly allocable expenses. For purposes of section 469 and regulations thereunder, an expense (other than interest expense) is clearly and directly allocable to portfolio income (within the meaning of paragraph (c)(3)(i) of this section) if and only if such expense is incurred as a result of, or incident to, an activity in which such gross income is derived or in connection with property from which such gross income is derived. * * *

There can be no dispute that the realized gain from the sale of the Property is to be treated as portfolio income, since the gain was not derived in the ordinary course of a trade or business, but was attributable to the disposition of property held for investment. Sec. 469(e)(1)(A)(ii)(II). The parties do not disagree.

In the FPAA, respondent disallowed $422,410 in "other deductions" (including the amounts paid as rollback taxes) as claimed by SLR on the 1990 return, but allowed portfolio deductions in the amount of $427,217 (which amount likewise included the rollback taxes). It is of course indisputable that under section 469(e)(1)(A)(i)(II) expenses clearly and directly allocable to portfolio income may not be taken into account in determining the income or loss from any passive activity, but instead are allocable to "such gross income"--i.e., the portfolio income--to which they relate.

It seems clear that the passive activity rules of section 469 interact with other Code provisions. We note in this connection that the conference report to accompany TRA 1986 states:

> Interaction with other Code sections.--It is clarified that the passive loss rule applies to all deductions that are from passive activities, including deductions allowed under sections 162, 163, 164, and 165. For example, deductions for State and local property taxes incurred with respect to passive activities are subject to limitation under the passive loss rule whether such deductions are claimed above-the-line or as itemized deductions under section 164. [H. Conf. Rept. 99-841 (Vol. 2), at II-139, 1986-3 C.B. (Vol. 4) 139.]

In this case, it is the treatment of the Texas rollback taxes that is in dispute. Therefore, if the portfolio income provisions are involved as respondent maintains, then section 164, relating to deductions for taxes, interacts with section 469(e)(1)(A)(i)(II) to determine the proper allocation of the

rollback taxes to SLR's portfolio income--its recognized gain on the sale of the Property.

Section 164(a) provides:

SEC. 164.   TAXES.

(a)   General Rule.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

(1)   State and local, and foreign, real property taxes.

(2)   State and local personal property taxes.

(3)   State and local, and foreign, income, war profits, and excess profits taxes.

(4)   The GST tax imposed on income distributions.

(5)   The environmental tax imposed by section 59A.

In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212 (relating to expenses for production of income).  Notwithstanding the preceding sentence, any tax (not described in the first sentence of this subsection) which is paid or accrued by the taxpayer in connection with an acquisition or disposition of property shall be treated as part of the cost of the acquired property or, in the case of a disposition, as a reduction in the amount realized on the disposition.

Thus, in the first sentence section 164 itemizes a number of taxes (including real property taxes) that are allowed as a deduction for the taxable year within which they are paid or accrued.  The second sentence allows as a deduction certain additional taxes which are paid or accrued within the taxable year in carrying on a trade or business or incurred for the

production of income. The last sentence of section 164(a) provides an exception in that notwithstanding the second sentence, certain taxes are required to be capitalized. Thus, any tax, other than any of those itemized in the first sentence, which is paid or accrued in connection with the acquisition or disposition of property, is to be treated as a cost of the acquired property or as a reduction in the amount realized on the disposition of property, as the case may be.

The last sentence of section 164(a) was added by section 134(a)(1) of TRA 1986, 100 Stat. 2116. According to the conference report, there previously was uncertainty as to whether certain taxes incurred in a trade or business or an income-producing activity could be deducted or had to be capitalized. The conference report explains that the new provision was added to make it clear that State, local, or foreign taxes (other than real property taxes and certain other specified taxes) that are incurred in a trade or business or in an income-producing activity in connection with the acquisition or disposition of property are to be capitalized. H. Conf. Rept. 99-841 (Vol. 2), at II-20 (1986), 1986-3 C.B. (Vol. 4) 20.

In the case before us petitioner would deem it advantageous to have SLR capitalize the rollback taxes. For example, section 68 places an overall limitation on itemized deductions in cases where the adjusted gross income of individuals exceeds an "applicable amount". (The shares of the realized gain on the

sale of the Property allocated to the partners on the Schedules K-1 exceeds the applicable amount in each case.)  Also, we note that for purposes of the alternative minimum tax under section 56, section 56(b)(1)(A)(ii) disallows any taxes described in paragraph (1), (2), or (3) of section 164(a).  (The record does not contain the income tax returns of the partners, so the applicability of the alternative minimum tax in individual cases is unknown.)

Petitioner argues that the rollback taxes paid by the partnership should simply be treated as a reduction in the amount realized on the sale of the Property, since the rollback taxes were incurred and paid solely as a negotiated condition of the sale.  Petitioner points out that the parties stipulated that the payment of the rollback taxes was a requirement of the sale imposed by the buyer, Pulte Home, and that without this requirement the rollback taxes would not have been incurred at the time of sale.  Petitioner suggests that the rollback taxes which were paid should not be treated as a tax at all, but rather as a cost of sale which reduced the amount realized.  Beyond this unamplified suggestion, petitioner bases his entire argument on the position that the rollback tax is not a tax on real property for purposes of section 164(a)(1).

Respondent disagrees that the rollback taxes paid by SLR should be treated as a reduction in the amount realized on the sale.  Instead, respondent argues that the rollback taxes are

State and local real property taxes, and therefore must be dealt with as expenses which are clearly and directly allocable to portfolio income.  Respondent also argues that the attorney's fee must be dealt with in a similar manner.

We agree with respondent for the reasons which follow.

Under Texas law, there are two distinct constitutional and statutory provisions concerning the valuation of land devoted to agricultural use for ad valorem tax purposes.  In order to qualify as agricultural use property under section 1-d, Tex. Const. Art. 8 (the agricultural use provision), a business venture for profit is required, and the business must be the primary occupation and source of income of the owner.  To qualify under section 1-d-1, Texas Const. Art. 8 (the open-space provision), the property must be currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and must have been so devoted for 5 of the preceding 7 years.  See also Tex. Tax Code Ann. secs. 23.41-23.46 (West 1992).  The principal difference between the two provisions is that open-space classification does not require that agriculture be the primary occupation and primary source of income of the owner.

Section 1.164-3, Income Tax Regs., defines a real property tax as follows:

> (b) Real property taxes.  The term "real property taxes" means taxes imposed on interests in real property and levied for the general public welfare, but

it does not include taxes assessed against local
benefits.  [Emphasis added.]

Rev. Rul. 80-121, 1980-1 C.B. 43, which both parties cite,
provides additional guidelines for determining whether a tax is
imposed on an interest in real property.  (Petitioner does not
contend that the rollback tax is a tax that is assessed against
local benefits rather than one that is levied for the general
public welfare.)  Rev. Rul. 80-121, 1980-1 C.B. 43 addressed, in
part, whether a Vermont tax imposed on gain from the sale or
exchange of certain land was deductible under section 164(a)(1)
as a real property tax.  Rev. Rul. 80-121, 1980-1 C.B. 43, 44-45,
states:

> Some of the characteristics of a tax imposed on
> real property or on an interest in real property are:
> (1)  the tax is generally imposed or triggered by the
> ownership of real property and not the exercise of one
> or more of the incidents of property ownership, such as
> use or disposition, (2) the tax is measured by the
> value of real property, and (3) liability for the tax
> is not solely personal.  [Citations omitted.]

Petitioner contends that the rollback tax should not be
treated as a real property tax for purposes of section 164(a)(1)
since the rollback tax lacks the necessary characteristics of a
real property tax as set forth in Rev. Rul. 80-121, 1980-1 C.B.
43.  In support of this argument, petitioner claims that the
rollback tax differs from a "garden variety" real property tax in
that the former is not a tax due and owing until the owner-user
determines to trigger the tax.  Petitioner also avers that Rev.
Rul. 80-121 guidelines except the rollback tax from real property

tax classification since the "rollback tax was imposed upon an act, changing the property's use from agriculture to non-agriculture, which involves [an exercise of] an incident of ownership of [the] property."

Respondent, on the other hand, maintains that, just as petitioner does not dispute that the $55,003.30 of ad valorem taxes assessed on the land were real property taxes, there should be no dispute that rollback taxes assessed at the Property's market value are real property taxes. The only difference between the two is the amount of the assessed value of the land. Respondent further asserts that the rollback tax is nothing like the transfer tax at issue in Rev. Rul. 80-121, 1980-1 C.B. 43, since the former is imposed on the value of real property, whereas the latter is imposed solely on gains from the sale or exchange of real property.

We agree with petitioner that not every tax concerning real property is a real property tax within the scope of section 164(a)(1). See, e.g., Rev. Rul. 80-121, 1980-1 C.B. 43. However, the fact that the property's owner-user controls the timing of the imposition of the rollback tax is not enough, by itself, to remove such a tax from the definition of a real property tax. Upon examination, the rollback tax meets each of the guidelines set forth in Rev. Rul. 80-121, 1980-1 C.B. 43.

The linchpin of petitioner's argument, that the rollback tax is triggered by an incident of ownership (the use of the

Property), and consequently is not a real property tax, is not convincing. The first guideline set forth in Rev. Rul. 80-121, 1980-1 C.B. 43, appears to be distilled from Rev. Rul. 73-600, 1973-2 C.B. 47; see also Rev. Rul. 75-558, 1975-2 C.B. 67. Rev. Rul. 73-600, 1973-2 C.B. 47, addressed the deductibility under section 164(a)(1) of a "rates tax" paid by a renter stemming from the renter's occupation or use of real property. In a case reflecting our approval of the ruling, we held that the rates tax was not a deductible real property tax under section 164(a)(1). Waxenberg v. Commissioner, 62 T.C. 594 (1974). In so holding, we found it decisive that the rates tax was measured by the rental value of the property, which "appears to value the privilege of occupying the property rather than the underlying value of the property itself." Id. at 604.

In sharp contrast, in the instant case, while the taxes were triggered because of a change in use of the Property, they were not imposed on the use or occupation of the Property per se. Unlike the rates tax at issue in Waxenberg v. Commissioner, supra, and contrary to petitioner's assertion that the taxes were "imposed upon an act", the rollback taxes were specifically "imposed on the land". Sec. 23.55, Tex. Tax Code Ann. (West 1992).

An ad valorem tax is one which is imposed on the basis of the value of the article or thing taxed. Waxenberg v. Commissioner, supra at 604. The rollback tax, like the tax on

the open-space assessed value of the Property that petitioner concedes is a real property tax, is based on the assessed value of the Property, albeit it is calculated using the market value of the land rather than the open-space assessed value. The market value assessment is made at the same time as the open-space assessment and is merely held in abeyance, with interest, from that date until a change in use or cessation of use occurs. Thus, the rollback provision functions as an ad valorem recapture tax. See Tex. Tax Code Ann. secs. 23.52(e), 23.55 (West 1992).

In Rev. Rul. 73-600, 1973-2 C.B. 47, the individual liable for the rates tax was only personally liable; if the tax was not paid, it could not be reduced to a lien against the occupied property. Here, however, a tax lien attaches to the land on the date the change of use occurs to secure payment of the additional tax and interest imposed by section 23.55, as well as any penalties incurred. Sec. 23.55(b), Tex. Tax Code Ann (West 1992).

Based on the above discussion, we hold that the Texas rollback tax is a tax imposed on an interest in real property, and is therefore, in both substance and form, a real property tax within the meaning of section 164(a)(1) and, by cross-reference, the parenthetical provision contained in the last sentence of section 164(a)(1). See Waxenberg v. Commissioner, supra at 603-604 (quoting City of De Land v. Florida Public Service Co., 161 So. 735, 738 (Fla. 1935)) ("[I]f the tax is computed upon the

valuation of the property, and assessed by assessors, * * * <u>although privileges may be included in the valuation</u>, it is considered a property tax.") (emphasis added); see also <u>Polakis v. Commissioner</u>, 91 T.C. 660, 665 (1988).

We now turn to consider whether SLR may classify the rollback taxes and attorney's fee as "Other deductions" on line 11 of its Schedule K, or whether the deductions must be treated by SLR's partners as line 10 deductions related to portfolio income.

Portfolio income subsumes all gross income, other than income derived in the ordinary course of a trade or business, that is attributable to the disposition of property held for investment. Sec. 469(e)(1)(A)(ii)(II); sec. 1.469-2T(c)(3)(i)(D), Temporary Income Tax Regs., 53 Fed. Reg. 5713 (Feb. 25, 1988). As stated, petitioner does not dispute that the income from the sale of the Property is portfolio income.

We have previously quoted section 1.469-2T(d)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5713 (Feb. 25, 1988), which states in part that "For purposes of section 469 and regulations thereunder, an expense * * * is clearly and directly allocable to portfolio income (within the meaning of paragraph (c)(3)(i) of this section) if and only if such expense is incurred * * * in connection with property from which such gross income is derived." Petitioner has conceded that the $55,003.30 of ad valorem taxes based on the Property's open-space assessment is

properly reclassified as a deduction related to portfolio income. Likewise, we think it ineluctable that rollback taxes, as real property taxes, are incurred "in connection with" the Property, and we therefore hold that they are expenses allocable to portfolio income under section 469(e)(1)(A)(i)(II) and the above regulations. Petitioner, in any event, has failed to convince us otherwise.

Under section 212(3), there is allowed as a deduction all the ordinary and necessary expenses paid or incurred in connection with the determination, collection, or refund of any tax. Although section 212(3) applies only to individuals, under section 702 each partner, in determining his income tax, is required to take into account separately his distributive share of certain partnership items. Section 702(a)(7) includes "other items of income, gain, loss, deduction, or credit, to the extent provided by regulations prescribed by the Secretary." Section 1.702-1(a)(8)(i), Income Tax Regs., provides that "Each partner shall take into account separately, as part of any class of income, gain, loss, deduction, or credit, his distributive share of the following items: * * * nonbusiness expenses as described in section 212". See Surloff v. Commissioner, 81 T.C. 210, 241 (1983). Since the parties have stipulated that the attorney's fees were related "to the determination of the rollback taxes" owing on the Property, we hold that the attorney's fees were

incurred "in connection with" the Property, and are, therefore, investment expenses related to portfolio income.

We note that petitioner now contends that the attorney's fees were incurred, not in the determination of the rollback taxes, as stipulated, but "as part of the contract negotiations concerning the disposition of the property".  In accordance with Woodward v. Commissioner, 397 U.S. 572 (1970), petitioner argues that the attorney's fees must be treated as capital expenditures, which would reduce the gain on the sale of the Property. However, the TMP's discussion of the attorney's fees in a letter to the partners dated January 7, 1992, indicates that the fees had nothing to do with negotiations for the sale of the Property. In any event, the Court will not permit petitioner to qualify or change the stipulation.  Rule 91(e).

To reflect the foregoing and issues previously resolved,

Decision will be entered
under Rule 155.